**OWENS–CORNING FIBERGLAS CORPORATION**

**v.**

**AMERICAN CENTENNIAL INSURANCE COMPANY.**

Court of Common Pleas of Ohio,
Lucas County.

No. CI90–2521.

Decided Sept. 8, 1995.

*Connelly, Soutar & Jackson, William M. Connelly* and *Steven Smith; Covington & Burling, Mitchell F. Dolin, Jackson Sharman* and *Eric Lasker; Davis & Young Co., L.P.A.,* and *Martin J. Murphy,* for Owens–Corning Fiberglas Corporation.

*Shumaker, Loop & Kendrick, Peter Silverman* and *William Heywood; Chadbourne & Park, Peter Hillman* and *Debra Petalkis,* for American Centennial Insurance Company.

*Sullivan, Ward, Bone, Tyler, Fiott & Asher, Thomas Slavin* and *Thomas Auth; Mayer, Brown & Platt* and *Michael Gill; Joseph Walsh,* for Protective National Insurance Company.

*Weston, Hurd, Fallon, Paisley & Howley* and *Warren Rosman; Harrington, Foxy, Dubrow & Canter, Mark Flory* and *Melissa Harnett,* for Associated International Insurance Company.

---

RICHARD W. KNEPPER, Judge.

This matter is before the court on the motion *in limine* filed on July 28, 1995, by the defendants, American Centennial Insurance Company ("ACIC"), Protective National Insurance Company ("PNIC"), and Associated International Insurance Company ("Associated"), against the plaintiff, Owens–Corning Fiberglas Corporation ("OCF"), seeking to exclude "state-of-the-art" testimony to be presented by OCF's experts, Drs. Thomas Howard and William Hughson.[1] Upon due consideration of the pleadings, memoranda of counsel, evidence, and applicable law, this court grants ACIC's motion.

### I

A motion *in limine* is designed "to avoid the injection into a trial of a potentially prejudicial matter which is not relevant and is inadmissible." *Rinehart v. Toledo Blade Co.* (1985), 21 Ohio App.3d 274, 278, 21 OBR 345, 349, 487

---

1. It has been represented to the court that both Associated and PNIC have settled with OCF. The court, therefore, will determine the motion only as it relates to ACIC.

N.E.2d 920, 924. In *Riverside Methodist Hosp. Assn. v. Guthrie* (1982), 3 Ohio App.3d 308, 310, 3 OBR 355, 357–358, 444 N.E.2d 1358, 1361, the court of appeals set forth the required two-step procedure:

"First, a consideration of the motion *in limine* as to whether any reference to the area in question should be precluded until admissibility can be ascertained during trial. Second, at the time when the party desires to introduce the evidence which is the subject of the motion *in limine*, there must be a second hearing or determination by the trial court as to the admissibility of the evidence, which is then determined by the circumstances and evidence adduced in the trial and the issues raised by the evidence."

█ A motion *in limine* is, therefore, a precautionary request, directed to the inherent discretion of the trial judge. *State v. Spahr* (1976), 47 Ohio App.2d 221, 1 O.O.3d 289, 353 N.E.2d 624.

"The sustaining of a motion in limine does not determine the admissibility of the evidence to which it is directed. Rather it is only a preliminary interlocutory order precluding questions being asked in a certain area until the court can determine from the total circumstances of the case whether the evidence would be admissible." Palmer, Ohio Rules of Evidence Rules Manual (1984), at 446, cited with approval in *State v. Grubb* (1986), 28 Ohio St.3d 199, 201, 28 OBR 285, 288, 503 N.E.2d 142, 145.

The inherent power of a court to control its proceedings is granted to it by Evid.R. 103(A) and 611(A). The use of the motion *in limine* serves the interest of judicial economy as well as those interests of counsel and the parties because it aids in reducing the possibility of the injection of error or prejudice into the proceedings. *Grubb, supra.*

## II

█ ACIC seeks to prohibit OCF from introducing expert testimony regarding "state-of-the-art" medical and scientific knowledge of asbestos hazards during the time OCF was manufacturing its asbestos-containing product, Kaylo. ACIC asserts that OCF's experts Drs. Thomas Howard and William Hughson will offer conclusions about the scientific knowledge based on their review of over one thousand medical and scientific articles published during the relevant time period. ACIC contends that such testimony is irrelevant to the issue of whether OCF expected or intended the asbestos-related injuries caused by its products containing asbestos.

According to ACIC, the analysis of whether OCF expected or intended the losses due to asbestos is a subjective standard in that the determining factor is what OCF actually knew while it was manufacturing asbestos-containing prod-

ucts. ACIC argues that "state-of-the-art" testimony relating to what the medical community knew at the time is objective evidence and, as such, is irrelevant to OCF's subjective state of mind because it is probative only of what OCF "should have known."

ACIC requests that a briefing schedule be set to determine whether OCF's knowledge will be considered in terms of a subjective standard, *i.e.,* what OCF actually knew, or by an objective standard, *i.e.,* what OCF should have known based on available information. It is unnecessary for the parties to argue this issue, as the court already determined what an insurer must demonstrate in order to prevail with an expected/intended defense. In its opinion and judgment entry, filed February 22, 1995, 74 Ohio Misc.2d 183, 660 N.E.2d 770, ruling on the parties' motions for summary judgment, this court set forth the law as it applies to an insurer's expected/intended defense when it ruled on Associated's motion on this issue. The court held:

"In order for Associated 'to avoid coverage on the basis of an exclusion for expected or intentional injuries, [it] must demonstrate that the injury itself was expected or intended.' [*Physicians Insurance Company of Ohio v.*] *Swanson* [ (1991) ], *supra,* 58 Ohio St.3d 189 at 193, 569 N.E.2d [906] at 911. See, also, *Preferred Risk Ins. Co. v. Gill* (1987), 30 Ohio St.3d 108, 30 OBR 424, 507 N.E.2d 1118. The insurer must show that the injury was intentional; '[i]t is not sufficient to show merely that the *act* was intentional.' (Emphasis added.) *Swanson, supra,* at 193, 569 N.E.2d at 911.

"For bodily injury to be intentional in the context of a specific exclusion, the actor must desire 'to cause the consequences of his act' or believe 'that the consequences are substantially certain to result.' *Nationwide Mut. Fire Ins. Co. v. Turner* (1986), 29 Ohio App.3d 73, 75, 29 OBR 83, 85, 503 N.E.2d 212, 215. Although not binding on this court, other jurisdictions have held that the 'state of the insured's mind at the time of his act' is the point in time used to determine whether an occurrence was expected or intended. *Monsanto Co. v. Aetna Cas. & Sur. Co.* (Dec. 9, 1993), Del.Super., 1993 WL 563251, at *5. See, also, *Great Am. Ins. Co. v. Gaspard* (La.1992), 608 So.2d 981; *Allstate Ins. Co. v. Zuk* (1991), 78 N.Y.2d 41, 571 N.Y.S.2d 429, 574 N.E.2d 1035.

"This court will also consider the perspective of the insured at the time of its action. OCF initiated the possibility of injury when it manufactured the asbestos-containing products, not when it purchased insurance. Hence, the manufacturing process is the definitive action. To determine whether OCF 'expected or intended' the occurrence, therefore, this court will consider OCF's intent at the time it manufactured asbestos-containing products.

"The issue to be decided is whether OCF intended, at the time it manufactured its products, the injuries which resulted from exposure to the asbestos-containing products. See *Swanson, supra.*"

Although Associated has settled with OCF, the law regarding the "expected or intended" argument applies to ACIC. OCF's state of mind regarding its intentions during the time it manufactured Kaylo is a subjective standard as it relates to OCF's intent to cause injury.

ACIC further contends that the expert testimony is irrelevant to OCF's state of mind because neither expert will testify that OCF actually knew of or relied on the medical opinions of the time. OCF, on the other hand, asserts that the expert testimony is necessary to explain the historical development of knowledge concerning the hazards associated with asbestos. According to OCF, the testimony regarding the medical communities' knowledge of the dangers of asbestos is necessary to provide a background for OCF's internal documents. OCF argues that the predicate of proof of subjective intent to injure is not only letters and memoranda of deceased management of the times, but the prevailing medical and scientific knowledge to which the author of the documents was exposed. "State-of-the-art" testimony places the words of OCF's documents in a proper context. OCF's state of mind cannot be proven without such evidence, OCF argues.

This court finds that evidence regarding "state-of-the-art" medical and scientific understanding of the dangers of asbestos may be probative of whether OCF expected or intended the injuries, so long as it is established that OCF knew of and relied on such medical and scientific studies and findings. There is insufficient evidence before this court to conclude that OCF's management knew of and relied on the medical opinions of the time regarding the dangers of asbestos. OCF, therefore, will be prohibited from presenting the testimony of Drs. Howard and Hughson unless and until OCF can establish adequate foundation through trial testimony that it knew of and relied on the medical and scientific attitudes and beliefs concerning the dangers of asbestos during the time OCF was manufacturing Kaylo.

This court's order is merely a preliminary interlocutory order precluding the expert testimony. See *State v. Grubb, supra.* If OCF is able to establish from the totality of the circumstances at trial that it considered the medical and scientific information available concerning the dangers of asbestos, then the testimony will be allowed, as it would be a necessary element in determining OCF's state of mind and intent.

## JOURNAL ENTRY

It is ORDERED that American Centennial Insurance Company's motion *in limine* to exclude the expert testimony of Drs. Howard and Hughson regarding

"state-of-the-art" medical and scientific information during the time Owens–Corning Fiberglas Corporation manufactured asbestos-containing products is GRANTED.

*Motion granted.*