GILLETTE, Appellant,

v.

ST. PAUL GUARDIAN INSURANCE COMPANY, Appellee.

[Cite as *Gillette v. St. Paul Guardian Ins. Co.* (1996), 113 Ohio App.3d 564.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

No. 95–L–137.

Decided Aug. 19, 1996.

*James M. Gillette,* for appellant.

*Ronald B. Lee* and *Laura M. Faust,* for appellee.

JOSEPH E. MAHONEY, Judge.

On March 23, 1995, appellant, Catherine Hall Gillette, filed a complaint in Lake County Common Pleas Court seeking a declaration of her rights under an insurance contract issued by appellee, St. Paul Guardian Insurance Company.

Appellant also sought damages. After filing its answer, appellee filed a motion for summary judgment on May 19, 1995. Appellant filed her brief in opposition on June 16, 1995. On August 1, 1995, the trial court granted appellee's motion for summary judgment. From that decision, appellant timely filed a notice of appeal.

The underlying facts of this case are generally not disputed by the parties. Appellee issued a homeowner's insurance policy, referred to by the parties as a PAK II policy, to its named insureds, appellant and her husband, James Gillette, on January 14, 1994. The policy provided personal liability coverage subject to a $500,000 limit, with a $300 deductible. Appellee also provided a personal liability umbrella endorsement which extended the limits of the PAK II policy to $1 million and added additional coverage not offered under the PAK II policy.

On March 30, 1994, appellant was a plaintiff in an action filed in Lake County Common Pleas Court captioned *Mentor ex rel. Wolfe v. Dawson Builders, Inc.*, case No. 94 CV 000393. In that case, certain residents of a housing development were attempting to block construction on a parcel of land in their subdivision which did not comply with the local ordinances. In response, Dawson Builders, Inc. ("Dawson Builders") filed a counterclaim against appellant alleging that the action filed by appellant was "deliberate, malicious and without cause and seeks to deprive this defendant of the use of it's [*sic*] property, without compensation." Appellant forwarded a copy of the counterclaim to appellee seeking coverage on her behalf.

On December 1, 1994, appellee notified appellant by letter that it had assigned defense counsel to represent her regarding the counterclaim. Approximately six weeks later, appellee notified appellant that it would not be defending or indemnifying her against the counterclaim. Appellee offered the following reasons:

"To the extent that the Counterclaim seeks damages for diminution of value, it does not allege 'property damage' as defined in the St. Paul policy; and

"Even if the Counterclaim does allege 'property damage,' there is no coverage since the alleged injury did not result from an 'occurrence,' as required by the St. Paul policy."

Subsequently, appellant asked appellee to reconsider its decision to deny coverage. On February 24, 1995, however, appellee again denied coverage. This resulted in the filing of appellant's action against appellee, which is the basis of this appeal.

Appellant has set forth the following assignments of error:

"1.  The trial court erred to the prejudice of plaintiff-appellant, Catherine Hall Gillette, in granting defendant-appellee, St. Paul Guardian Insurance Co.'s motion for summary judgment.

"2.  The trial court erred in finding that appellee owes no duty to defend appellant on the Dawson counterclaim or provide insurance coverage there[for] to appellant under the primary personal liability provisions and personal umbrella liability endorsement of the insurance contract."

In the first assignment of error, appellant asserts that the trial court erred in granting appellee's motion for summary judgment.  In the second assignment of error, appellant contends that the trial court erred in finding that appellee owed her no duty to defend on the counterclaim or provide insurance coverage therefor under the primary personal liability provisions of the PAK II policy or the personal liability umbrella endorsement.  These assignments of error are interrelated and, therefore, will be addressed together.

Civ.R. 56(C) provides:

"Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  No evidence or stipulation may be considered except as stated in this rule.  A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion of summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."

The Supreme Court of Ohio has stated that the moving party bears the burden of establishing that (1) there is no genuine issue as to any material fact;  (2) the moving party is entitled to judgment as a matter of law;  and (3) reasonable minds, construing the evidence in favor of the nonmoving party, can come to but one conclusion and that conclusion is adverse to the party opposing the motion. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47; *Morris v. Ohio Cas. Ins. Co.* (1988), 35 Ohio St.3d 45, 46–47, 517 N.E.2d 904, 906–907.

Recently, the Supreme Court of Ohio set forth the burden that is placed on each party in a summary judgment action.  In *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264, the court held:

"[A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of

the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some *evidence* of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." (Emphasis *sic.*) *Id.* at 293, 662 N.E.2d at 274.

In the case *sub judice,* in support of its motion for summary judgment, appellee attached a copy of the insurance policy in question and a copy of the counterclaim filed by Dawson Builders. In response, appellant filed a brief and attached her own affidavit in which she stated:

"7. Affiant is advised and therefore alleges that Dawson Builders, Inc. is a necessary party to the action as the current owner of the real estate, and enforcement of the conditions for approval of the ordinance, reformation of the plat or remand of the subdivision plans to the City of Mentor for further proceedings require Dawson as a party.

"8. Affiant did not join Dawson Builders, Inc. as a party for the purpose of preventing it from * * * legally using * * * its property, but joined it as a necessary party in order to enforce the conditions for approval of the subdivision."

■ The relevant portions of the insurance policy are as follows. The PAK II policy provided:

"Legal Liability Protection. Under the liability section of this policy you're covered when somebody makes a claim against you. We'll cover your legal liability resulting from an occurrence in which there is actual accidental property damage, personal injury or death, anywhere in the world, subject to the limitations and exclusions in PAK II. By occurrence, we mean an event, including continuous or repeated exposure to the same conditions, resulting in personal injury or property damage *neither expected nor intended* by anyone insured by PAK II. The *only* intentional injury that is covered is assault and battery committed to save a life or property.

" * * *

" 'Property damage' is damage to someone else's property or its loss or destruction and also *the loss of its use.*

" * * *

" 'Personal injury' is physical bodily injury such as broken bones. It also includes nonphysical injuries to a person's feelings or reputation, including mental injury, mental anguish, wrongful eviction, libel, slander, defamation of character, invasion of privacy and false arrest. Remember: you are not covered for liability for physical bodily injury if it results from an *intentional* act. Other nonphysical personal injury is not covered if you could've expected the injury that resulted." (Emphasis added.)

Under the "Major Exclusions" portion of the PAK II policy, it is stated:

"PAK II doesn't cover liability of any person who *intentionally* causes personal injury or property damage, including sexual or physical abuse. Even if the property damage or personal injury is more than was intended, *we don't cover it because it is the result of an intentional act.*

" * * *

"The *only* intentional injury covered is assault and battery committed to save a live [*sic* ] or property." (Emphasis added.)

Thus, it is clear that the recurring theme throughout the PAK II policy is that there is no coverage for an intentional act unless the act is assault and battery to save a life or property.

Similarly, the personal liability umbrella endorsement provides:

"This endorsement expands your PAK II policy to give you and your family extra liability protection above and beyond the coverage provided by your PAK II and other primary policies.

" * * *

"What do we mean by an accident or incident? Anything that causes property damage, personal injury or death *without your expecting or intending it.* The *only* intentional injury that is covered is assault and battery committed to save life or property.

" * * *

"What do we mean by property damage? Any damage to tangible property or its loss or destruction. Also the loss of its use * * *.

" * * *

"What do we mean by personal injury? Bodily injury, of course. But also injuries to a person's feelings or reputation. Like mental injury, mental anguish,

shock, wrongful eviction, libel, slander, defamation of character, invasion of privacy, and false arrest.

"* * *

"In those cases where this policy protects you against claims not covered by your PAK II or any other primary policies, we'll do much more for you than just pay for legal liabilities.

"We'll be responsible for investigating and defending any suit for damages against you or anyone else insured by this endorsement even if it's groundless or fraudulent."

While there are some subtle differences between the provisions of the foregoing endorsement and PAK II policy, intentional acts are again excluded from coverage by the personal liability umbrella endorsement.

█ Appellant argues that the insurance policy must be construed in her favor. However, the Supreme Court of Ohio has consistently held that insurance contracts must be construed in accordance with the same rules as other written contracts. *Universal Underwriters Ins. Co. v. Shuff* (1981), 67 Ohio St.2d 172, 173, 21 O.O.3d 108, 109, 423 N.E.2d 417, 418. The Supreme Court has further held that when the language of the policy is clear and unambiguous, the court may not "resort to construction of that language." *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.* (1992), 64 Ohio St.3d 657, 665, 597 N.E.2d 1096, 1102; *Karabin v. State Auto. Mut. Ins. Co.* (1984), 10 Ohio St.3d 163, 167, 10 OBR 497, 499, 462 N.E.2d 403, 406. A review of the insurance policy in the present case reveals clear and unambiguous language. Accordingly, there is no need to resort to construction of the policy.

The trial court determined that there was no material issue of fact that appellant intended to block Dawson Builders from constructing houses on its land and that her lawsuit achieved that result, at least temporarily. Appellant takes issue with that determination, claiming that the only evidence of her intent regarding her motivation for filing the suit was contained in her affidavit wherein she denied joining Dawson Builders as a party for the purpose of preventing it from legally using its property but, rather, asserted that Dawson Builders was joined solely because it was a necessary party.

█ In *Physicians Ins. Co. of Ohio v. Swanson* (1991), 58 Ohio St.3d 189, 569 N.E.2d 906, the Supreme Court of Ohio held, at syllabus:

"In order to avoid coverage on the basis of an exclusion for expected or intentional injuries, the insurer must demonstrate that the injury itself was expected or intended."

Thus, in order to avoid its obligation to defend, appellee must show that appellant intended to deny Dawson Builders the use of its property, not just that appellant intentionally filed her suit naming Dawson Builders as a defendant.

In the present case, despite appellant's allegation in her affidavit in opposition to appellee's motion for summary judgment that Dawson Builders was only named as a necessary party to the suit, it is clear that the sole reason for the suit was to prevent Dawson Builders from using its property in a manner perceived by the plaintiffs to be in derogation of the local ordinances. Thus, it was appellant's intent, rightfully or wrongfully, to prevent Dawson Builders from using its property in a certain manner. That would be the outcome if appellant was successful in her suit.

However, even if the eventual property damage was more than what was intended, it still would be the result of an intentional act and not covered by the policy, which provides that "even if the property damage or personal injury is more than was intended, we don't cover it because it is the result of an intentional act."

Based upon the foregoing analysis, it is clear that appellant intended the loss of at least the partial use of Dawson Builders' property. Accordingly, appellee has no duty to defend appellant against Dawson Builders' counterclaim because its insurance policy specifically excludes a defense for intentional acts.

Appellant also relies on the case of *Willoughby Hills v. Cincinnati Ins. Co.* (1984), 9 Ohio St.3d 177, 9 OBR 463, 459 N.E.2d 555. However, the holding of *Willoughby Hills*, as stated in the syllabus, was:

"Where the insurer's duty to defend is not apparent from the pleadings in the action against the insured, but the allegations do state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept the defense of the claim."

In the case *sub judice*, the insurer's duty to defend was not apparent from the pleadings, the allegations did not state a claim which was potentially or arguably within the policy coverage, nor was there any doubt whether a theory of recovery within the policy coverage had been pleaded. The fact that the insurer initially assigned defense counsel to represent appellant was not dispositive on this issue. Once counsel had an opportunity to review the counterclaim, appellant was notified that there was no coverage. Accordingly, *Willoughby Hills* does not support appellant's claim.

Hence, the trial court properly granted summary judgment in favor of appellee.

Appellant's assignments of error are without merit.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

NADER and MARY CACIOPPO, JJ., concur.

MARY CACIOPPO, J., retired, of the Ninth Appellate District, sitting by assignment.