OPINION
The issue in this case is whether the personal liability coverage provided to an insured under a homeowner's insurance policy issued by plaintiff-appellant, Westfield Insurance Company ("Westfield"), applies to the property damage and bodily injuries sustained by defendants-appellees, Freda Blamer and her son David Blamer, when such damages resulted from the insured intentionally setting fire to a couch on the front porch of Mrs. Blamer's residence. Because we find, as a matter of law, that the insured's act of intentionally setting the fire did not constitute an "occurrence" to which the liability coverage applies under the policy, we reverse the decision of the trial court granting summary judgment in favor of the appellees.
The material facts in this case are uncontroverted. In the early morning hours of July 29, 1995, a heavily intoxicated defendant-appellee, Arthur B. Creighton, entered the front porch of Mrs. Blamer's residence, poured charcoal lighter fluid on a sofa located on the porch, and ignited the sofa with a lighter. The fire ultimately spread to the residence causing significant property damage to the residence and bodily injury to Mrs. Blamer.
On January 31, 1996, Creighton pleaded guilty to two counts of aggravated arson in violation of R.C. 2909.02 and one count of arson in violation of R.C. 2909.03. Creighton received an indeterminate sentence of not less than ten years and no more than twenty-five years.
At the time of the incident, Creighton was an insured under his parents' homeowner's insurance policy issued by appellant Westfield. This policy provided personal liability coverage to an insured for "damages because of bodily injury orproperty damage caused by an occurrence." An "occurrence" is defined under the policy as:
 [A]n accident * * * which results, during the policy period, in:
 a. Bodily Injury; or
b. Property damage."
The policy also contains an intentional-acts exclusion, providing that coverage did not apply to injury or damage "which is expected or intended by one or more insureds." On January 24, 1997, the Blamers filed suit seeking money damages for injuries resulting from Creighton's conduct and naming him and John Doe Insurance Company, Creighton's then-unknown insurer, as defendants. On October 7, 1997, Westfield filed a declaratory judgment action seeking a declaration that the homeowner's policy at issue did not cover the intentional acts of Creighton and, as a result, Westfield had no obligation to defend Creighton in the underlying tort action or indemnify him against any liability imposed by such action.
At his deposition taken in this case, Creighton could not remember most of the details concerning the setting of the fire itself. However, Creighton did testify that he knew the Blamers from the neighborhood, that he did not specifically know that they were in the residence when he started the fire, but that he had no reason to believe that they were not there. Furthermore, in answers to requests for admissions propounded by the Blamers pursuant to Civ.R. 36, Creighton admitted that any injury suffered by the Blamers as a result of his conduct was unintended, unexpected, and accidental.
On July 31, 1998 and August 3, 1998 respectively, Westfield and the Blamers each filed motions for summary judgment. Westfield argued that the policy does not cover the Blamers' damages in this case because such damages did not result from an accident and are otherwise excluded from coverage under the policy's intentional acts exclusion provision. The Blamers argued that their damages did result from an accident and the exclusion does not apply because Creighton did not specifically intend to harm the Blamers and because such harm was not substantially certain to result from his conduct.
On October 15, 1998, the trial court issued its decision on the motions. Relying extensively on Physicians Ins. Co. ofOhio v. Swanson (1991), 58 Ohio St.3d 189, the trial court agreed with the Blamers that coverage applies unless Creighton specifically intended to injure the Blamers. The trial court further held that even though Creighton admitted he intended to set the sofa on fire, it could not be inferred from the evidence that Creighton intended to specifically injure the Blamers. As stated by the trial court:
 Creighton has consistently stated that he did not intend to cause the specific physical injuries to the Blamers. Westfield has pointed to no evidence in the record by which it could be concluded that Creighton knew the Blamers were present when he set the sofa on fire, or that he specifically intended through his action to injure the Blamers. Nor does it appear that Creighton intended to do any more than set the sofa on fire, or that he intended for the fire to spread to the house itself. (Decision at 4.)
Based upon this analysis, the trial court held that the personal liability provisions in the Westfield policy covers the Blamer's injuries, denied Westfield's motion for summary judgment, and granted the Blamer's motion for summary judgment.
On November 20, 1998, the trial court filed its judgment entry reflecting its decision. It is from this entry that Westfield timely appealed, raising the following three assignments of error:
Assignment of Error No. 1
 The Trial Court erred by failing to consider whether bodily injuries resulting from a fire intentionally set by an insured to a residence known by him to be occupied are "bodily injuries caused by an occurrence" as that term is defined by the policy.
Assignment of Error No. 2
 The Trial Court erred by refusing to infer intent to injure a matter of law for the purpose of excluding insurance coverage under a homeowner's policy where the insured used an accelerant to purposefully set fire to a couch on the porch of a residence known by him to be occupied in the middle of the night.
Assignment of Error No. 3
 The Trial Court erred by denying a jury an opportunity to determine whether it could be inferred that an arsonist could reasonably expect that someone could be injured when he used an accelerant to set fire to a couch located on the porch of a residence known by him to be occupied in the middle of the night.
In its first assignment of error, appellant contends that the trial court erred when it failed to find that the Blamers' injuries did not result from an "occurrence," i.e., an accident, for which liability coverage is provided under the policy. Westfield contends that there is nothing accidental about intentionally dousing the couch with lighter fluid and setting it on fire. These facts alone, contends appellant, are sufficient to take Creighton's conduct outside the definition of an accident and outside its obligation to indemnify Creighton.
"It is axiomatic that an insurance company is under no obligation to its insured, or to others harmed by the actions of an insured, unless the conduct alleged of the insured falls within the coverage of the policy." Gearing v. Nationwide Ins. Co.
(1996), 76 Ohio St.3d 34, 36. "Coverage is provided if the conduct falls within the scope of coverage defined in the policy, and not within an exception thereto." Id.
As noted above, the Westfield policy at issue here provides liability coverage for an "occurrence," which the policy defines as an "accident" that results in property damage or bodily injury. Given the longstanding public policy in Ohio against obtaining liability insurance for one's intentional torts, "inherent in a policy's definition of `occurrence' is the concept of an incident of an accidental, as opposed to an intentional, nature." (Emphasis sic.) Gearing, supra, at 38. In determining whether an incident is accidental for purposes of liability insurance, "the focus should be on the injury and its immediately attendant causative circumstances." Worrell v. Daniel (1997),120 Ohio App.3d 543, 551.
Here, appellees concede that Creighton's act of setting the couch on fire was not itself an accident. However, relying onSwanson, supra, appellees contend that the trial court properly found that their damages were the result of an accident because Creighton neither intended to cause their harm and because such harm was not substantially certain to result from his conduct.
In Swanson, the Ohio Supreme Court ruled that an insurer was obligated to defend and indemnify a teenage boy who shot a BB gun in the general direction of a group of other teens, not intending to hit anyone, but unfortunately striking one of the teens in the eye. In so ruling, the court specifically held that in order to avoid coverage under an intentional acts exclusion, it was not sufficient to show that the act was intentional, "[t]he insurer must [also] demonstrate that the injury itself was expected or intended." Id. at syllabus.
We find, however, that despite its broad language,Swanson does not mandate coverage in this case. Unlike the insured here, the insured in Swanson did not intend to cause any
harm, nor was harm substantially certain to result from his actions. As noted by the Supreme Court in Gearing, supra, at 39:
 Our finding of liability coverage in Swanson was in the context of facts where the intentional shooting of a gun did not necessarily equate to resulting injury. Even though all evidence pointed to the conclusion that Swanson meant to shoot the gun, the act of shooting the gun at a distance seventy to one hundred feet away from the ultimate victim could not be said to necessarily result in personal injury, particularly in light of his testimony that he was aiming elsewhere. Swanson's testimony to the effect that he never intended or expected for anyone to be harmed was not necessarily logically inconsistent with the facts surrounding the shooting.
In Gearing, the court held that liability coverage did not apply to acts of sexual molestation of a minor despite the insured's admission that he did not subjectively intend to hurt or harm his victims. "[I]n those cases where an intentional act is substantially certain to cause injury, determination of an insured's subjective intent, or lack of subjective intent, is not conclusive of the issue of coverage." (Emphasis added.) Id. at 39. "Rather, an insured's protestations that he `didn't mean to hurt anyone' are only relevant where the intentional act at issue is not substantially certain to result in injury." Id.
Thus, Swanson does not require that the insured intended the full extent of the resulting injury in order for the conduct to be considered intentional and thus outside the scope of coverage. See Horvath v. Nationwide Mut. Fire Ins. Co. (1996),108 Ohio App.3d 732 (act of hitting another on the head with a club-like device causing death was outside scope of coverage even though insured did not intend to cause death); Hoh v. Sublett
(Aug. 10, 1994), Hamilton App. No. C-930473, unreported (act of striking plaintiff in face knowing that injury was possible was outside scope of coverage even though insured did not intend or appreciate the "full extent of the possible injuries."). Rather, coverage is inapplicable if the insured intended to cause aninjury by his intentional acts or if injury was substantially certain to occur from such acts. See Grandjean v. James (July 26, 1996), Montgomery App. No. 15708, unreported ("[t]he [Swanson] court did not state that the insured had to intend the extent of the injury, the court merely required that the insured intended or expected to cause an injury."). (Emphasis added.); Aetna Casualty Surety Co. v. Cigany (Sept. 24, 1998), Cuyahoga App. No. 73230 ("[t]he Swanson court did not state that the insured had to intend the extent of injury, only that the insured had to intend or expect to cause an injury."). (Emphasis added.)
The recent decision by the Eighth Appellate District inCigany is particularly relevant here. In Cigany, the insured, a high school student, used a lighter to set fire to a stuffed teddy bear located in a storage area at his school building. As a result of the burning of the bear, the fire spread to the building, causing significant damage. Like the policy at issue in the instant case, the student was insured for damages resulting from an "occurrence," which the policy defined as an accident. Affirming summary judgment for the insurer, the court specifically rejected the insured's argument that the damage to the school building was accidental since the insured only intended to burn the bear and not the building itself. According to the court, it was sufficient under Swanson that the student intended to cause "some harm." "That he did not intend to cause the extent of the harm is not relevant * * *. Having satisfied its burden of demonstrating that Cigany intended to cause harm and, therefore, that his actions were not accidental, there was no `occurrence' as defined in the policy sufficient to trigger coverage."
Likewise, it is equally immaterial in the instant case that Creighton may not have specifically intended that the fire spread to the Blamers' residence or that he did not specifically intend to cause Mrs. Blamer's injuries. Creighton necessarily intended to cause some harm (and harm was substantially certain to result) when he doused the couch with lighter fluid and set it on fire. Thus, like the insured in Cigany, Creighton's actions cannot be considered accidental, and the Blamers' damages cannot be considered to have resulted from an "occurrence" to which coverage applies.
Moreover, to hold otherwise would frustrate the longstanding public policy of denying liability coverage for intentional, criminal acts because society has an interest in discouraging such conduct. As noted by the court in Gearing,supra, at 38, "[l]iability insurance does not exist to relieve wrongdoers of liability for intentional, antisocial, criminal conduct." Here, by dousing the couch with lighter fluid and setting it on fire, Creighton committed arson in violation of R.C.2909.03, a crime for which he has been incarcerated. As such, public policy precludes holding appellant liable under these facts. See Nationwide Mut. Ins. Co. v. Finkley (1996), 112 Ohio App.3d 712,715-16 (it would violate established public policy to hold an insurer responsible for injuries caused by an insured who willfully and purposefully attempted to elude the police in an automobile chase through an urban area); Worrell, supra, at 551 (stating that holding insurer responsible for insureds' participation in homicide would be against public policy).
Finally, we are not persuaded by appellees' reliance on the pre-Gearing case of Michigan Millers Ins. Co. v. Anspach
(1996), 109 Ohio App.3d 618. In Anspach, the Second Appellate District ruled that liability coverage applied to the conduct of two minors who acted as "look outs" while others robbed a house and set it on fire, causing personal injuries and death to its occupants. The evidence showed that while the principles in the crime knew that the house was occupied, the two insured "look outs" did not. Given this fact, the Anspach court held that coverage applied as to the minors conduct because while they intended to assist in the robbery and the arson, they did not intend or expect the resulting damage to the occupants. In so doing, however, the Anspach court applied an expansive reading ofSwanson—one that cannot be maintained given the Ohio Supreme Court's pronouncements in Gearing and the other authorities discussed above.
More importantly, however, the result in Anspach
directly contradicts the Ohio Supreme Court's holding in Cuervo v.Cincinnati Ins. Co. (1996), 76 Ohio St.3d 41, a case decided the same day as Gearing. In Cuervo, the issue was whether liability insurance covered a father's negligent conduct in failing to properly supervise his son, who sexually abused two minors. The court of appeals had ruled that liability insurance applied because there was no evidence that the father intended or expected any harm to occur to the minor children. The Ohio Supreme Court reversed, holding that it is immaterial that an insured did not intend to cause injury when the plaintiffs' damages "flow from" the otherwise intentional acts of others that do not constitute an "occurrence" under the policy. Id. at 44. Since the damages to the minor children resulted from the intentional, criminal acts of the son, there was no "occurrence." Given that there was no "occurrence," there could be no coverage. The same rationale applies to the facts in Anspach, where the injuries sustained by the occupants of the house resulted from the intentional acts of the principles to the crime. As in Cuervo, the damages did not result from an "occurrence" for which coverage could be applied. As such, the Anspach court's conclusion that the insured minors did not intend or expect to cause harm to the house occupants was immaterial to whether coverage should have applied in the first instance. In short, the finding of coverage in Anspach cannot be maintained under the law today.
For the foregoing reasons, we rule as a matter of law that appellees' damages did not result from an "occurrence," to which liability coverage is provided under appellant's policy. As a result, the trial court erred in granting summary judgment for appellees.
Appellant's first assignment of error is sustained, and appellant's remaining assignments of error are rendered moot and the judgment of the Franklin County Court of Common Pleas is reversed and this cause is remanded for further proceedings consistent with this opinion.
Judgment reversed and cause remanded.
PETREE and BROWN, JJ., concur.