MONTICELLO INSURANCE CO., Plaintiff,

v.

Elbert Lee HALE, et al., Defendants.

No. C–3–02–245.

United States District Court, S.D. Ohio, Western Division.

Sept. 2, 2003.

Jeffrey A. Goldwater, Robert A. Chaney, Bollinger, Ruberry & Garvey, Chicago, IL, Thomas Hays Pyper, Jenks Pyper & Oxley Co., Dayton, OH, for Plaintiff/Counter Defendant.

Carl Anthony Cramer, Kettering, OH, William Lee Havemann, Dayton, OH, for Defendants/Counter Claimant.

## DECISION AND ENTRY SUSTAINING PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS (DOC. # 9); COUNTERCLAIMANTS' MOTIONS FOR JUDGMENT ON THE PLEADINGS (DOC. # 7, DOC. # 10) ARE OVERRULED; PLAINTIFF'S MOTION TO STRIKE DEFENDANTS' REPLY BRIEF (DOC. # 18) IS MOOT; THE MOTION OF VENETA COLTER FOR LEAVE TO INTERVENE (DOC. # 21) IS OVERRULED AS MOOT; JUDGMENT IS TO BE ENTERED IN FAVOR OF PLAINTIFF AND AGAINST DEFENDANTS; TERMINATION ENTRY

RICE, Chief Judge.

The instant declaratory judgment action seeks a ruling as to whether Plaintiff/Counterclaim Defendant Monticello Insurance Company ("Monticello") is obligated under its contract of insurance with Defendant/Counterclaimant Spanky's Doll House ("Spanky's") to defend Spanky's, its owners, Defendants/ Counterclaimants Elbert Lee Hale ("Hale") and Ralph A. Bowers ("Bowers"), and its manager, Defendant/Counterclaimant Chris Remor ("Remor"), in a state court action against them. On February 25, 2002, Veneta J. Colter filed suit in the Montgomery County Court of Common Pleas, setting forth claims against Spanky's, Bowers, Remor and Timothy Hannah, arising out the shooting death of her son, Eric Colter, by Mr. Hannah at Spanky's on February 24, 2001 (Doc. # 1, Ex. A). In particular, Mrs. Colter brought a wrongful death claim against Hannah (Count One), common law claims of negligence against Defendants Spanky's, Bowers, and Remor (Count Two), statutory negligence claims against Spanky's, based on violations of Ohio Rev.Code §§ 4301.22(A)(1),[1] 4399.16,[2] and 4399.18[3] (Dram Shop Act) (Count

---

**1.** Ohio Rev.Code § 4301.22(A)(1) prohibits the selling of beer or intoxicating liquor to any person under twenty-one (21) years of age.

**2.** Ohio Rev.Code § 4399.16 states that "No tavern keeper shall permit rioting, reveling, intoxication, or drunkenness in his house or on his premises."

**3.** Ohio Rev.Code § 4399.18 provides, in part, that no claim exists against a liquor permit holder or an employee thereof who sold beer

Three), and a claim for burial costs against all Defendants (Count Four). As noted by the parties, Mrs. Colter's litigation was dismissed while the pending Motions were being briefed. Mrs. Colter refiled her action in February of 2003 against Spanky's, Bowers, Hale, Remor and Hannah, and she added Yogi–Yagena Corporation as a party-defendant.[4] In this refiled action, Mrs. Colter has asserted a claim against all Defendants for allowing Hannah's gang entry into Spanky's and permitting them to behave in a manner that was substantially certain to lead to violence and injury (Count One). She also set forth a wrongful death claim against Hannah (Count Two), a claim based on common law negligence, recklessness and wantonness against all Defendants (Count Three), a wrongful death claim based on statutory negligence against Spanky's and all Defendants responsible for Spanky's (Count Four), a claim for burial costs against all Defendants (Count Five), and an additional survival claim against all Defendants, based on Ohio Rev.Code § 2307.60 (Count Six).[5] (Exh. to Doc. # 20).

According to its Complaint (Doc. # 1), Monticello issued a Commercial Liquor Liability Policy No. MLL 303265 ("the Policy"), effective June 16, 2000, to June 16, 2001, to Hale and Bowers, dba Spanky's. Plaintiff alleges that this Policy contains an "Assault and Battery Amendatory Endorsement," which, Monticello states, ex-

cludes from coverage any actions or proceedings arising out of assault and battery. The company further asserts that the provision relieves it from any duty to defend or to indemnify the insured in any action or proceeding arising from an assault or battery. On May 28, 2002, after the initiation of Mrs. Colter's initial action in the state court, Monticello filed the instant declaratory judgment action, seeking a declaration that the Policy excludes claims arising out of assault and battery from coverage and that it has no duty to defend or indemnify Defendants on any of Mrs. Colter's claims (Doc. # 1). Defendants filed a Counterclaim, asserting that the assault and battery exclusion is ambiguous, that the policy provides coverage for Mrs. Colter's claims, and that Monticello's refusal to provide coverage has been wrongful and contrary to the terms of the Policy (Doc. # 5). Defendants have sought a declaratory judgment to that effect. In addition, they have sought attorney's fees and expenses in defending against this litigation, as well as punitive damages in the amount of $50,000.00, due to Monticello's bad faith refusal to provide coverage and to defend them in the state court action.

Pending before the Court are the Motion of Remor, Hale and Spanky's for Judgment on the Pleadings (Doc. # 7), Monticello's Motion for Judgment on the Pleadings (Doc. # 9), and Bower's Motion for Judgment on the Pleadings (Doc. # 10).[6] For the reasons assigned, Monti-

---

or intoxicating liquor to an intoxicated person unless the injury occurred on the permit holder's premises or parking lot and was proximately caused by the negligence of the permit holder or its employee.

4. Although the caption of the refiled complaint names Yogi–Yagena, the body of the complaint does not further identify that corporation. Thus, its relationship to the other Defendants is unclear.

5. Ohio Rev.Code § 2307.60 generally provides that anyone who is injured by a criminal

act may, unless specifically excepted by law, bring a civil action to recover full damages, including attorney's fees and costs.

6. Also pending before the Court is Monticello's Motion to Strike Defendants' Reply Brief (Doc. # 18) and the Motion of Veneta Colter For Leave to Intervene (Doc. # 21). Beginning with Monticello's Motion, on July 7, 2003, the Court granted, by notation order, Defendants' Motion for Leave to File Reply Brief Instanter (Doc. # 20). Accordingly, Monticello's Motion to Strike that Brief is

cello's Motion (Doc. # 9) is SUSTAINED. Counterclaimants' Motions (Doc. # 7, Doc. # 10) are OVERRULED.[7]

A party is allowed to move for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure once the pleadings are closed, as they are at this time in this litigation. In considering a motion for judgment on the pleadings, the Court must accept all factual allegations of the Complaint as true. *Paskvan v. City of Cleveland Civil Serv. Comm'n,* 946 F.2d 1233, 1235 (6th Cir.1991)(citing *Beal v. Missouri Pac. R.R.,* 312 U.S. 45, 51, 61 S.Ct. 418, 85 L.Ed. 577 (1941)). "The motion is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan,* 946 F.2d at 1235.

"It is axiomatic that an insurer may maintain a declaratory judgment action to determine its rights and obligations under a contract of insurance. A liability insurer's obligation to its insured arises only if the claim falls within the scope of coverage." *Cincinnati Indemn. Co. v. Martin,* 85 Ohio St.3d 604, 607, 710 N.E.2d 677 (1999) (citation omitted). Herein, the parties agree that the insurance policy at issue is governed by Ohio law. Under the law of that State, insurance policies are generally interpreted by applying rules of construction and interpretation applicable

in contract law. *Gomolka v. State Auto. Mut. Ins.,* 70 Ohio St.2d 166, 167–168, 436 N.E.2d 1347 (1982). "If the language of the insurance policy is susceptible to more than one interpretation, the language will be construed strictly against the insurer and liberally in favor of the insured." *Williams v. Allstate Ins. Co.,* 2003 WL 1795552 at *2 (Ohio App.2d Dist. Apr. 4, 2003); *Faruque v. Provident Life & Acc. Ins. Co.,* 31 Ohio St.3d 34, 508 N.E.2d 949 (1987). It should be emphasized, however, that provisions are to be strictly construed against the insurer only when they are ambiguous. *GenCorp, Inc. v. American Intern. Underwriters,* 178 F.3d 804, 818 (6th Cir.1999); *see University of Cincinnati v. Arkwright Mut. Ins. Co.,* 51 F.3d 1277, 1280 (6th Cir.1995). Moreover, the general rule of liberal construction cannot be used to create an ambiguity where one does not exist. *Williams, supra; Karabin v. State Auto. Mut. Ins. Co.,* 10 Ohio St.3d 163, 166–167, 462 N.E.2d 403 (1984). If the terms of a policy are clear and unambiguous, a court must enforce the contract as written, giving words used in the contract their plain and ordinary meaning. *Williams, supra,* citing *Cincinnati Indemn. Co. v. Martin,* 85 Ohio St.3d 604, 607, 710 N.E.2d 677 (1999). When a policy contains exclusions from liability, those exclusions must be clear and specific, and "a general presumption arises to the effect

MOOT. Parenthetically, the Court notes that Plaintiff was not prejudiced by the untimely filing of Defendants' Memorandum. The Motions at issue remained pending at the time that Defendants' Reply Memorandum was filed, and all parties have thoroughly briefed the issue before the Court. Accordingly, the Court will not reconsider its prior ruling.

Turning to Mrs. Colter's Motion, the Court concludes, *supra,* that no genuine issues of material fact exist and that Monticello is entitled to judgment on the pleadings. Because the Court's ruling resolves this litigation, Mrs. Colter's Motion for Leave to Intervene (Doc. # 21) is OVERRULED as MOOT.

7. Spanky's, Remor, Hale and Bower are "Defendants" for purposes of Monticello's Motion for Judgment on the Pleadings and are "Counterclaimants" for purposes of their Motion. Similarly, Monticello is "Plaintiff" for purposes of its Motion, and Counterclaim Defendant for purposes of Remor, Hale, Bower and Spanky's Motions. However, in the interest of simplicity, the Court, from this point forward, will refer to the Monticello as Plaintiff only, and it will refer to the other parties as Defendants only.

that that which is not clearly excluded from the operation of such contract is included in the operation thereof." *King v. Nationwide Ins. Co.*, 35 Ohio St.3d 208, 214, 519 N.E.2d 1380, 1386 (1988); *Midwest Specialties, Inc. v. Westfield Ins. Co.*, 1994 WL 107192 (Ohio App.2d Dist. Mar. 30, 1994).

The central question in the present litigation is the construction of the Assault and Battery Amendatory Endorsement ("the Endorsement"), attached to the Policy. The Endorsement provides:

## ASSAULT AND BATTERY AMENDATORY ENDORSEMENT

This insurance does not apply to actions and proceedings to recover damages for bodily injuries or property damage arising from the following are [sic] excluded from coverage: and the company is under no duty to defend or to indemnify an insured in any such action or proceeding arising from the following:

1. Assault;
2. Battery;
3. Harmful or offensive contact between or among two or more persons;
4. Apprehension of harmful or offensive contact between or among two or more persons; or
5. Threats by words or deeds.

Regardless or [sic] degree of culpability or intent and without regard to:

A. Whether the acts are alleged to be or at the instruction or at the direction of the insured, his officers, employees, agents, or servants; or by any [sic] otherwise on, at or near premises owned or occupied by the insured; or any other person;

B. The alleged failure of the insured, or his officers, employees, agents or servants, in the hiring, supervision, retention or control of any person whether or not an officer, agent, or servant of the insured;

C. The alleged failure of the insured or his officers, employees, agents or servants to attempt to prevent, bar, or halt any such conduct.

This exclusion applies as well to any claims made by any other person, firm or organization, asserting right derived from, or contingent upon, any person asserting a claim excluded under clauses A, B, or C (above); specifically excluding from coverage claims for:

1. Emotional distress or for loss of society, services, consortium and or income;
2. Reimbursement for expenses (including but not limited to medical expense, hospital expenses, and wages) paid or incurred by such other person, firm or organization;
3. Any obligation to share damages with or repay someone who must pay damages because of the injury.

(Doc. # 1, Ex. B).

In their Motions, the parties agree that the Endorsement is comprised of three sections. In the first section, the endorsement states, in general terms, that the policy does not provide coverage for bodily injury or property damages arising from the five enumerated behaviors, *i.e.*, (1) Assault, (2) Battery, etc. The second part of the exclusion begins with "Regardless [of] degree of culpability or intent," and it indicates generally that the exclusion applies regardless of, *inter alia*, the failure of the insured to take certain actions. The third section purports to exclude derivative and conditional claims.

In its Motion, Monticello asserts that it has no obligation to provide coverage for the Colter lawsuit, because it is an action for bodily injury "arising from" a battery or a "harmful or offensive contact between or among two or more persons," *i.e.*, an action precluded by the first section of the

Endorsement. Plaintiff asserts that the language of the Endorsement is broadly drafted, precluding claims irrespective of whether the battery was committed by another patron or by a bar employee. Monticello further asserts that "arising from" language precludes all tort claims stemming from the assault and battery.

Addressing the first section of the Endorsement, Defendants assert that Ohio courts have considered nearly identical contract language and have concluded that such language was ambiguous. Specifically, Defendants rely upon *Lock v. Oney's Pub*, 1996 WL 648357 (Ohio App.2d Dist. Nov. 8, 1996), in which the trial court found that the assault and battery exclusion in the insurance policy was ambiguous. Therein, the policy stated:

> 1. This insurance does not apply to "bodily injury" or "property damage" arising out of: (a) the actual or threatened assault or battery or the failure to suppress or prevent such action by the insured or by anyone else for whom the insured is legally responsible.* * *"

Upon review, the Second District Court of Appeals agreed that the policy language was ambiguous as to whether the exclusion for assaults applied only to acts committed by the insured or to acts committed by other patrons as well. It stated that Oney's Pub could have reasonably believed that an assault committed by a non-employee of the pub was not excluded from the policy.

Plaintiff contests the persuasiveness of the *Lock* decision, arguing that another Ohio appellate court has held that the very same policy is "plain and unambiguous." (Doc. # 12 at 3), citing *Vasquez v. Campos*, 1996 WL 612438 (Ohio App. 6th Dist. Oct. 25, 1996). As an alternative argument, Monticello asserts that *Lock* is irrelevant, because the first section of the Endorsement does not contain "nearly identical" language to that construed in *Lock*.

The Court agrees with Monticello that the Assault and Battery Amendatory Endorsement is not "nearly identical" to the one at issue in *Lock*. Although the provision at issue therein was not parsed by the court of appeals, the *Lock* policy was clearly subject to two interpretations. Specifically, the phrase, "by the insured or by anyone else for whom the insured is legally responsible" could reasonably have been interpreted to modify only the phrase, "the failure to suppress or prevent such action." It also could reasonably have been interpreted to modify "the actual or threatened assault or battery" as well. Thus, the policy did not unambiguously state that the policy excluded coverage for assault and battery by non-employees.

■ In the present case, section one of the Endorsement does not distinguish between employee and non-employee actors. Rather, it states "This insurance does not apply to actions and proceedings to recover damages for bodily injuries or property damages arising from ... (1) assault; (2) battery; (3) Harmful or offensive contact between or among two or more persons ..." Thus, the initial paragraph of the Assault and Battery Exclusion clearly states that it applies to "persons," and there is no basis to conclude from this paragraph that "persons" should be interpreted as assaults and batteries by employees only. Thus, the first section of the Endorsement, unlike the provision in *Lock*, contains no ambiguity. The section in no ways limits the exclusion to conduct by employees or agents of the establishment. To so limit that section would require the addition of terms that are not there.

Having concluded that the first section of the Endorsement unambiguously excludes from coverage any action arising out of assault and battery, regardless of whether the actor was an employee or non-employee, the Court must address Defen-

dants' argument that the exclusion in the first section is limited by the second section of the Endorsement. Defendants assert that paragraphs A, B, and C are directed to conduct by employees, thus indicating that the first section of the Endorsement could be interpreted as applying only to assaults and batteries by employees of the insured. In other words, Defendants argue that the second section of the Endorsement modifies the first section and, thus, the first section should be read with the limitations of the second section in mind. They argue that the second section is ambiguous and does not clearly exclude assault and battery by third parties.

In support of their argument, Defendants attempt to distinguish the exclusionary clauses discussed in *Negron v. Odeon Concert Club, Inc.*, 1998 WL 229498 (Ohio App. 8th Dist. May 7, 1998), *appeal not allowed*, 83 Ohio St.3d 1419, 698 N.E.2d 1007 (1998), and *Sphere Drake Ins. Co. v. Ross*, 80 Ohio App.3d 506, 609 N.E.2d 1284 (9th Dist.1992), from that in the Endorsement herein. In *Negron*, the plaintiff had attended a New Year's Eve party at Odeon. When a fight began near her, she was unable to move away from the brawlers, because the establishment was so crowded. Consequently, the plaintiff allegedly was violently thrown to the ground and trampled. The plaintiff received a default judgment against the establishment, and she subsequently filed a petition against its insurer, Alliance Insurance Group for payment under its liability insurance policy. The policy contained an assault and battery exclusion, which provided, in pertinent part:

> 1. "Claims" or "suits" to recover damages for "bodily injury" or "property damage" arising from actual or alleged "assault" and/or "battery," as herein de-

fined, are excluded from coverage, and the Company is under no duty to defend or indemnify an insured regardless of the degree of culpability or intent and without regard to:

> a. Whether the acts are alleged to be by or at the instruction or at the direction of the insured, his officers, employees, agents or servants; or by any other person lawfully or otherwise on, at or near premises owned or occupied by the insured or by any other person;
> b. The alleged failure of the insured, or his officers, employees, agents or servants, in the hiring, supervision, retention or control of any person, whether or not an officer, employee, agent or servant of the insured;
> c. The alleged failure of the insured or his officers, employees, agents or servants to attempt to prevent, bar or halt any such conduct.

*Id.* at *2. The trial court granted summary judgment for the plaintiff, indicating that "coverage exists because [Odeon] negligently allowed the premises to be overcrowded which prevented [Negron] from removing herself from the area of potential harm." On appeal, the court of appeals reversed, concluding that the language of the policy was neither ambiguous nor permitted coverage for the insured's negligent acts. It reasoned:

> The plain language of the endorsement to the policy excludes coverage for injuries such as those sustained by the appellee because the actor's intent is irrelevant; what was excluded was the type of injury itself. In this manner, appellee removed the ambiguity and shielded itself from the obligation to defend which had been found by the supreme court in *[Physicians Ins. Co. of Ohio v.] Swanson* [, 58 Ohio St.3d 189, 569 N.E.2d 906 (1991)].[8]

**8.** In *Swanson,* the Ohio Supreme Court ad-      dressed whether an exclusion for intentional

The *Negron* court concluded that the plaintiff's claim was precluded, because she had alleged that she had been thrown to the ground and trampled, an injury which was specifically covered by the assault and battery exclusion.

In *Sphere Drake*, a patron, Kelly Ross, was injured at a bar known as "Froggies" during an altercation with the establishment's security staff. Froggies was covered under a general liability insurance policy issued by Sphere Drake Insurance Company. The insurance policy between Sphere and Froggies contained an endorsement which provided:

> It is agreed that the insurance does not apply to bodily injury or property damage arising out of assault and battery or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of the insured, his employees, patrons or any other person.

After Ross filed suit against Froggies for negligent hiring and supervision of its security staff, Sphere filed a declaratory judgment action to determine whether, under the policy, it had a duty to indemnify Froggies should Ross prevail in his lawsuit. The trial court held that the assault and battery exclusion in the policy precluded coverage for Ross' tort claim. On appeal, the Ninth District Court of Appeals agreed, stating that "[f]rom the clear language of the exclusionary clause, Sphere is not liable for injuries 'arising out of assault and battery or out of any act of omission' resulting in an assault and battery." 609 N.E.2d at 1285–86. The court concluded

that the fact that Ross had asserted a cause of action against Froggies for negligent hiring and supervision of its employees did not avoid the exclusion. It reasoned that "the fact that a concurrent cause in negligence may have contributed to Ross' injury does not change the fact that his injury was the result of an assault and battery, the very thing the policy excludes from its coverage." *Id.* at 1286.

Defendants assert that paragraph A in the second section of the Endorsement is missing key words that are included in the provisions in *Negron* and *Sphere Drake*. They assert that the paragraph is ambiguous, because it cannot be concluded, in the absence of the omitted words, that an assault committed by a third person is excluded under the Endorsement. In particular, Defendants argue that the "most that could be said is that the assault and battery exclusion applies 'without regard' to 'whether the acts are alleged to be . . . at the instruction or at the direction of the insured[,] his officers, employees, agents or servants.'" (Doc. # 7 at 11–12). Although Defendants acknowledge that "or any other person" appears at the end of paragraph A, they assert that it must modify "premises owned .or occupied by the insured", if anything, because there is no other remote antecedent which the phrase could modify and still make sense.

Defendants make much of paragraph A, which they argue does not address non-employees. The Court agrees that a reading of the paragraph indicates that it is replete with typographical errors, and it cannot be coherently interpreted without numerous additional words. Although the omitted words are fairly obvious,[9] the

---

injuries applied when the act was intentional but the resultant injury was not. The Court held that "[i]n order to avoid coverage on the basis of an exclusion for expected or intentional injuries, the insurer must demonstrate that the injury itself was expected or intended." 569 N.E.2d at 907 (syllabus).

**9.** In *Maise v. Cat's Meow, Inc.*, 683 So.2d 846 (La.App. 4th Cir.1996), the Court interpreted a nearly identical endorsement when faced with whether an assault and battery provision in a liability insurance contract precluded coverage for claims against a bar arising out of an altercation at the establishments. The provision provided:

Court cannot interpret that paragraph as it assumes it should have been written. Reading paragraph A as written, the missing words unquestionably create ambiguity.

Assessing paragraph A in light of the ambiguity caused by the missing words, the Court finds that the decisions in *Negron* and *Sphere Drake* still support Plaintiff's position, not Defendants'. The Ohio courts of appeals focused on the fact that assault and battery exclusions precluded claims "arising out of" assault and battery. Such language is specifically included in section one of the Endorsement herein. With regard to the language similar to that used in paragraph A, the courts of appeals stated that the language rendered the intent of the establishment irrelevant. There is no suggestion from the decisions that the language in paragraph A limits the broad scope of the "arising out of assault and battery" language in the exclusion. Simply, *Negron* and *Sphere Drake* do not support a contention that the exclusion encompasses only assaults and batteries by employees.

Defendants' argument is further undermined by paragraphs B and C. Paragraph B provides that the exclusion applies "without regard to: ... the alleged failure of the insured ... in the hiring, supervision, retention or control of any person *whether or not an officer, agent, or servant of the insured.*" (emphasis added). As argued by Defendants, the terms "hiring," "supervision," and "retention" imply an employment-type relationship, thus suggesting that "control" should also be interpreted with an employment-type relationship in mind. However, the subsequent clause, *i.e.,* "whether or not an officer, agent, or servant of the insured," indicates that paragraph B was not intended to be so limited. Rather, the last clause expressly and unambiguously states that "person" can include individuals who are not officers, agents or servants of the insured. In fact, reading the Policy as a whole, "person" has been used broadly, including in places where the likely reference is to a patron. For example, in Section I, paragraph 2(e), the Policy indicates that the exclusion at issue does not apply to injuries to which the insured may be liable by reason of "(1) Causing or contributing to the intoxication of any person; (2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol ..." Likewise, in the third section of the Endorsement, the exclusion applies to any claims made by any other person, firm or organization. These additional provisions indicate that "person" has not been used synonymously with "employee."

Most notably, paragraph C specifically precludes coverage for Mrs. Colter's negligence claims against Defendants. Para-

... [T]he Company is under no duty to defend or indemnify an insured regardless of the degree of culpability or intent and without regard to:
a. Whether the acts are alleged to be by or at the instruction or at the direction of the insured, his officers, employees, agents or servants; or by any other person lawfully or otherwise on, at or near the premises owned or occupied by the insured; or by any other person;
b. The alleged failure or fault of the insured, or his officers, employees, agents or servants, in the hiring, supervision, retention or control of any person, whether or not an officer, employee, agent or servant of the insured;
c. The alleged failure or fault of the insured, or his officers, employees, agents or servants, to attempt to prevent, bar or halt any such conduct.
Although the Court cannot supplement paragraph A in the Endorsement with the additional words contained in the *Maise* provision, the Court assumes that Monticello intended to draft its Endorsement as written by Alliance Insurance Company in *Maise.*

graph C provides that the exclusion in the first section of the Endorsement applies "without regard to . . . [t]he alleged failure of the Insured or his officers, employees, agents or servants to attempt to prevent, bar, or halt any such conduct." Although "such conduct" is not defined, a reading of the Endorsement *en toto* unambiguously indicates that the referenced conduct is the five enumerated actions in the first section, *i.e.*, assault, battery, etc.

In Count Two of her initial complaint, Mrs. Colter asserts claims of negligence based on Defendants' provision of access to a minor; failure to ensure that no weapons were brought into the bar; failure to ensure compliance with Ohio law, which prohibits weapons in side a liquor permit establishment; failure to enforce Spanky's policy prohibiting the wearing of gang colors; failure to contain or remove patrons who exhibit conduct or behavior that evidences a real potential for harm to others inside the club; and failure to provide proper training and supervision for employees who were hired for the purpose who had the duty of dealing with situations that evidence a real potential for harm to others. Such claims go to Defendants' conduct in preventing the shooting death of Eric Colter. Paragraph C clearly precludes claims based on any alleged failure on the part of Spanky's or its employees to prevent an assault and battery. Accordingly, Mrs. Colter's negligence claims are excluded from coverage by paragraph C.

Although the Endorsement excludes Mrs. Colter's negligence claims against Defendants, Plaintiff may still be obligated to defend Defendants in the state law action if the statutory claims are covered. Section One of the Policy (Liquor Liability Coverage) sets forth the liquor liability coverage provided by Monticello and some exclusions to that coverage. It provides, in pertinent part:

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "injury" to which this insurance applies if liability for such "injury" is imposed on the insured by reason of the selling, serving or furnishing of alcoholic beverage. We will have the right and duty to defend any "suit" seeking those damages . . .

**2. Exclusions.**

This insurances does not apply to: . . .

e. **Your Product**

"Injury" arising out of "your product". This exclusion does not apply to "injury" for which the insured or the insured's indemnities may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages. . . .

A reading of this Section indicates that the exclusion in subsection 2 does *not* apply to Dram Shop Act claims. In other words, under Section I, claims based on contributing to the intoxication of any person and furnishing alcoholic beverages to a minor remain covered under the Policy.

In light of the fact that Section I would provide coverage for Mrs. Colter's statutory claims, the Court must address whether the Assault and Battery Endorsement applies, thus prohibiting those claims, which would otherwise be covered. The Court answers this question in the affirmative. Subparagraph a in paragraph 1 of Section One states that Monticello will pay those sums that the insured is obligated to pay

as damages "because of 'injury' *to which this insurance applies.*" The Endorsement specifically provides that the insurances does not apply to bodily injuries or property damages arising from, *inter alia,* assault and battery. Thus, in order to give full effect to all of the terms of the Policy when read together, the limitation in the Endorsement must be read into the phrase, "to which this insurance applies." In other words, because claims arising out of assault and battery are excluded by the Endorsement, Monticello is not obligated to pay those sums that the insured becomes legally obligated to pay, nor does it have a duty to defend any suit seeking those damages, pursuant to Section One, paragraph 1(a). Moreover, the exclusion in paragraph 2(e) and the exclusion from the exclusion therein are inapplicable to claims for damages arising out of assault and battery. *See Utica Fire Ins. Co. v. Teschner's Tavern,* 101 Ohio App.3d 635, 656 N.E.2d 378 (8th Dist.1995).

In conclusion, upon review of the Policy at issue, the Court finds there are no genuine issues of material fact. Although the Assault and Battery Amendatory Endorsement is replete with typographical errors, the first section clearly and unambiguously excludes from coverage claims arising out of assault and battery, without any requirement that such action be taken by the insured or an officer, employee, agent, or servant of the insured. Upon review of Mrs. Colter's complaints, claims against Defendants, both statutory and common law, fall within the Endorsement. Consequently, Plaintiff has no obligation under the Policy to defend Defendants in Mrs. Colter's action against them nor to indemnify them should Mrs. Colter prevail. Accordingly, Plaintiff's Motion for Judgment on the Pleadings is SUSTAINED. Defendants/Counterclaimants' Motions for Judgment on the Pleadings are OVERRULED.

For the foregoing reasons, Monticello's Motion to Strike Defendants' Reply Brief (Doc. # 18) is MOOT. Plaintiff's Motion for Judgment on the Pleadings (Doc. # 9) is SUSTAINED. Defendants/Counterclaimant's Motions for Judgment on the Pleadings (Doc. # 7, Doc. # 10) are OVERRULED. The Motion of Veneta Colter for Leave to Intervene (Doc. # 21) is OVERRULED as MOOT.

Judgment is to be entered in favor of Plaintiff/Counterclaim Defendant and against Defendants/ Counterclaimants.

WHEREFORE, the captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.