DECISION AND JUDGMENT ENTRY
{¶ 1} Grange Mutual Casualty Company appeals the Scioto County Court of Common Pleas' judgment entry, which found against Grange on its declaratory judgment action seeking a finding that it did not have to indemnify or defend its insured under a rental policy. The policy covered occurrences but excluded coverage when the insured expected or intended to cause injury. The court found, after a jury trial, that Grange failed to prove that its insured, Christopher G. Tumbleson, intended to injure Jerry Lee Lockhart. Consequently, the court found that under the terms of the rental policy Grange had to indemnify Tumbleson against damages in the separate negligence action and had the duty to defend him. Grange argues that it did not have to prove Tumbleson "intended to injure" Lockhart because "intent to injure" is inferred as a matter of law because of the circumstances of this case. We disagree because the circumstances do not involve (1) a prior criminal conviction with an "intent to injure" element as part of the offense or (2) a sexual molestation of a minor. Grange next argues that the trial court erred when it failed to instruct the jury on the definition of an accident. We disagree because a trial court does not abuse its discretion when it does not instruct a jury on "common knowledge" words. Accordingly, we affirm the judgment of the trial court.
 I {¶ 2} Lockhart testified that Tumbleson's wife, Beverly, owed him $600, which he had loaned her. The Tumblesons denied that Beverly owed Lockhart money. They testified that they formerly rented a place from Lockhart, but Lockhart made improper advances toward Beverly, which caused them to move. Lockhart denied making improper advances toward Beverly.
 {¶ 3} On December 30, 2000, Lockhart drove with passengers Floyd Carroll and Alyssa Hayslip from West Portsmouth to Minford to see his girlfriend. The Tumblesons and their two children lived along the way. When Lockhart passed their trailer, he observed Tumbleson outside and turned around. He pulled into their driveway with the purpose of asking Tumbleson to pay back the $600 loan he had made to Beverly.
 {¶ 4} Lockhart testified that when he pulled in behind a car and a truck in the driveway, it was snowing and it was "kind of dark." He rolled his window down when Tumbleson approached his side. Lockhart said, "Hi. I saw you out here and I thought I'd stop by and see if you could pay anything on what you owe me." Tumbleson answered, "I don't owe you an f-ing thing." Lockhart responded, "Well, hell you owe me $600.00." Later, Tumbleson said, "I don't owe you an f-ing thing. I'm going in the house to get my gun and you'd better be gone when I get back." Lockhart remembered Tumbleson going into the trailer and coming out shooting over the top of his car. He started his car after the first shot and tried to back up because he did not want Tumbleson to accidentally hit him. While ducking down, he tried to look out his back window and keep his eye on Tumbleson. He could not see where he was going and hit a tree. He did not know how many shots Tumbleson fired but felt a bullet hit him in the face after he saw Tumbleson's hand drop down.
 {¶ 5} Tumbleson testified that before Lockhart pulled into his driveway, he drank two beers with his dinner. He came out of his home but could not see who was in the car because of the headlights. He went to the driver's side of the car before he realized it was Lockhart. Lockhart asked him for the $600, but he denied the existence of the loan. Tumbleson told Lockhart that (1) he was trespassing; (2) he was going to call the law; (3) he was going to get his gun; and (4) Lockhart had better go before he returns.
 {¶ 6} Tumbleson testified that Lockhart had a reputation for carrying a gun, and thought that he might have a gun after seeing something on his lap. Lockhart mumbled something to him that sounded like he threatened to kill him, but he was not sure. He was not afraid of Lockhart, but he was afraid that Lockhart might burn his trailer down. Lockhart's prior advances toward his wife were the furtherest thing from his mind because that happened a long time ago.
 {¶ 7} Tumbleson testified that he went back inside his trailer, told his wife to call the sheriff, retrieved his loaded gun from under the bed and took the safety off. His gun was a 40 caliber, semi-automatic pistol with a clip with bullets that fit in the handle. When he went back outside, he heard the alarm going off in his pickup truck. He moved between his truck and his wife's car and began firing his gun a couple of times into the ground and when Lockhart still did not leave, he fired in the air two or three times. He denied lowering his arm and firing through the windshield because he said that he could see the headlights but not the car.
 {¶ 8} Carroll testified that he sat in the front seat. When they pulled into the uneven driveway, it was dark and snowing. The only light was the back door light on the trailer. A separate car was just leaving, and Carroll asked the occupants if Tumbleson was home. Shortly, Tumbleson came out of his trailer with a beer in his hand and had a talk with Lockhart about money. They did not start to get mad at each other. Eventually, Tumbleson told Lockhart that he was going inside to get a gun, and he expected Lockhart to leave before he got back. Lockhart did not leave because he did not take Tumbleson seriously.
 {¶ 9} Carroll testified that Tumbleson exited his trailer by way of the porch. When he stepped to the bottom of the steps, he began shooting over the top of the car. He was "[p]robably 25 feet" away. Tumbleson held the weapon horizontally, palm side down, instead of vertically. As Lockhart backed the car away from Tumbleson and leaned to his right and down, one of the shots entered the front windshield striking him in the left part of his chin. Carroll said, "Well when he was shooting and his hand you know, he started, when he shot, he was shooting up over the car and his hand just kind of come down a little bit. It was like to me it looked like he never meant to shoot the guy. * * *. [B]ut it wasn't like a quick aim[,] it was like after you hold your arm up so long and then you drop it cause you can't hold it up that far." The bullet would have missed Lockhart if he had remained sitting straight up.
 {¶ 10} Hayslip's testimony largely paralleled Carroll's testimony. She testified that Lockhart started the car and started moving backwards after the first shot. Lockhart tried to duck down and drive at the same time. The bullet came through the windshield before the back of the car hit a tree. Tumbleson was about "20 or 25 feet" away when the bullet struck Lockhart. The bullet entered the windshield about one or two inches above the dashboard. Like Carroll, she said that the bullet would have missed Lockhart if he had remained behind the steering wheel.
 {¶ 11} Detective John Koch testified that (1) the weapon Tumbleson used had a kick to it; (2) an improper way to shoot a gun is to shoot it horizontally with the ground; and (3) the proper way to use a gun is to shoot it vertically with the ground because the shooter has control and stability.
 {¶ 12} Lockhart's guardian filed an action against Tumbleson alleging that he had negligently discharged a firearm. Consequently, Grange filed a declaratory judgment action against Tumbleson and Lockhart's guardian seeking a finding that (1) it was not liable for any damages in the negligence action because the allegations of Tumbleson's acts of shooting were "not an occurrence and fall under an exclusion in the policy" and (2) it was not responsible for providing a defense to Tumbleson for the same reason. In short, Grange argued that, because of the exclusion, it did not have to indemnify or defend Tumbleson in the negligence action. Grange filed a motion for summary judgment, which the court denied.
 {¶ 13} The parties stipulated that the court would try the declaratory judgment action before the negligence action. If the jury returned a verdict in favor of Grange, then Lockhart would dismiss the negligence action. If the jury returned a verdict against Grange, then Grange would pay the policy limits in the negligence action.
 {¶ 14} The jury answered two interrogatories and found that (1) Grange had not proven by a preponderance of the evidence that Tumbleson's shooting of Lockhart was not an occurrence under the terms of the policy and (2) Grange had not proven by a preponderance of the evidence that Tumbleson had expected or intended to cause injury to Lockhart. As a result, the court entered judgment against Grange. Later, the court resolved a request for attorney fees, which made the judgment against Grange a final appealable order.
 {¶ 15} Grange appeals and asserts the following three assignments of error: "[I.] The Common Pleas Court erred when it failed to grant Grange Mutual Casualty Company's motion for summary judgment. [II.] The Court of Common Pleas erred when it failed to instruct the jury that the Grange policy excluded bodily injury, expected or intended by defendant Tumbleson and that if harm was a substantially certain consequence of his acts, then his intent to injure would be inferred. [III.] The Court of Common Pleas erred to the prejudice of plaintiff Grange Mutual Casualty Company when it failed to instruct the jury on the definition of an accident."
 II {¶ 16} In his first and second assignments of error, Grange argues that the trial court erred as a matter of law when it denied Grange's motion for summary judgment and denied its request to give a jury instruction. Grange contends that it was not obligated to indemnify and defend Tumbleson in the separate negligence action because the "intent to injure," which is one of the elements it had to show for exclusion under the rental policy, is inferred as a matter of law under the circumstances of this case. Grange claims that we should expand the holdings inPreferred Risk Ins. Co. v. Gill (1987), 30 Ohio St.3d 108 andGearing v. Nationwide Ins. Co. (1996), 76 Ohio St.3d 34 to include the circumstances in this case. We disagree. Because the summary judgment and jury instruction issues involve a question of law, our review is de novo.
 {¶ 17} Summary judgment is appropriate when the court finds that the following factors have been established: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed in his or her favor. Civ.R. 56. See Bostic v. Connor
(1988), 37 Ohio St.3d 144, 146; Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64, 66; Morehead v.Conley (1991), 75 Ohio App.3d 409, 411. "In reviewing the propriety of summary judgment, an appellate court independently reviews the record to determine if summary judgment is appropriate. Accordingly, we afford no deference to the trial court's decision in answering that legal question." Morehead at 411-12. See, also, Schwartz v. Bank One, Portsmouth, N.A.
(1992), 84 Ohio App.3d 806, 809.
 {¶ 18} The burden of showing that no genuine issue of material fact exists falls upon the party requesting summary judgment. Dresher v. Burt (1996), 75 Ohio St.3d 280, 294, citing Mitseff v. Wheeler (1988), 38 Ohio St.3d 112, 115. The moving party bears this burden even for issues that the nonmoving party may have the burden of proof at trial. Id. "However, once the movant has supported his motion with appropriate evidentiary materials, the nonmoving party may not rely upon the allegations and/or denials in his pleadings. * * *. He must present evidentiary materials showing that a material issue of fact does exist." Morehead at 413.
 {¶ 19} We apply identical standards of interpretation to insurance contracts as we do to other written contracts. HybudEquip. Corp. v. Sphere Drake Ins. Co., Ltd. (1992),64 Ohio St.3d 657, 665. We must give the language of an insurance policy its plain and ordinary meaning. Dairyland Ins. Co. v. Finch
(1987), 32 Ohio St.3d 360, 362. When deciding whether a claimant is an insured under a policy and the contract is ambiguous and susceptible of more than one interpretation, we must liberally construe the language in favor of the policyholder, not the claimant. Westfield Ins. Co. v. Galatis, 100 Ohio St.3d 216, at ¶ 35, 2003-Ohio-5849. We review the interpretation of insurance contracts de novo. Nationwide Mut. Fire Ins. Co. v. Guman Bros.Farm (1995), 73 Ohio St.3d 107, 108.
 {¶ 20} The long-standing public policy in Ohio is to decline coverage in insurance policies for intentional acts. Gearing,supra, at 38. However, insurance companies must include the uninsurability language in their policies. Here, the policy covered occurrences but excluded coverage when the insured expected or intended to cause injury. The parties agree that the rental policy in question had uninsurability language that required Grange to show two elements, i.e. Tumbleson (1) intended to shoot his gun and (2) intended to injure Lockhart. They agree that Tumbleson intended to shoot the gun. Hence, the issue is whether Grange had to prove by a preponderance of the evidence the "intended to injure" element or whether this element is inferred as a matter of law because of the circumstances of this case.
 {¶ 21} When we examine "the circumstances of the case," we look beyond the allegations in the complaint because "the mere insinuation of negligence in a civil complaint cannot transform what are essentially intentional torts into something `accidental' that might be covered by insurance." State Auto.Ins. Cos. v. Manning (Aug. 29, 1997), 11th Dist. No. 96-G-2000, at 7, 1997 WL 531234.
 {¶ 22} The Ohio Supreme Court found in Gill (prior aggravated murder conviction) and Gearing (prior gross sexual imposition conviction) that "intent to injure" was inferred as a matter of law in the underlying civil actions. The court held that "intent to injure" can be inferred as a matter of law in narrow circumstances, i.e. (1) any prior criminal conviction that has an "intent to injure" element as part of the offense, Gill,
and (2) any intentional acts of sexual molestation involving a minor, Gearing (the act and harm are so intertwined that to intend the act is also to intend the harm).
 {¶ 23} In Physician's Ins. Co. v. Swanson (1991),58 Ohio St.3d 189, the circumstances did not include a prior criminal conviction with an "intent to injure" element. The Swanson
court did not find that "intent to injure" is inferred as a matter of law when a 12-year-old boy shot a BB gun at a sign 70-75 feet away from the victim (lost an eye) that he intended to scare. The Swanson court stated that competent, credible evidence supported the finding that the injury was an accident. Likewise, in Buckeye Union Ins. Co. v. New England Ins. Co.
(1999), 87 Ohio St.3d 280, the court did not find that "intent to injure" is inferred as a matter of law because the circumstances of a prior case finding of actual malice did not include an element of "intent to injure."
 {¶ 24} Here, Tumbleson was not convicted of a criminal offense like in Gill and Gearing. Stated differently, the circumstances of this case do not involve (1) a prior criminal conviction with an "intent to injure" element or (2) sexual molestation of a minor. Hence, pursuant to Gill, we find that the "intent to injure" element is not inferred as a matter of law. Consequently, Grange had to prove by a preponderance of the evidence that Tumbleson intended to injure Lockhart.
 {¶ 25} Grange argues that we should expand the holdings inGill and Gearing to include cases other than murder and sexual molestation. It cites a plethora of appellate cases for its position. It implies that the Ohio Supreme Court holdings do not require a criminal conviction. It maintains that we should follow the "substantial certainty" test mentioned in Gearing.
 {¶ 26} We agree that a court can infer "intent to injure" as a matter of law in circumstances that do not involve murder or sexual molestation. We further agree that the court in Gill andGearing did not limit its holdings so that a criminal conviction is required. However, even if we applied the "substantial certainty" test outlined in Gearing, we still would not infer an "intent to injure" as a matter of law under the circumstances of this case.
 {¶ 27} "[I]n those cases where an intentional act issubstantially certain to cause injury, determination of an insured's subjective intent, or lack of subjective intent, is not conclusive of the issue of coverage. Rather, an insured's protestations that he `didn't mean to hurt anyone' are only relevant where the intentional act at issue is not substantiallycertain to result in injury. * * *. Indeed, in Swanson we approved of the premise that "`resulting injury which ensues from the volitional act of an insured is still an "accident" within the meaning of an insurance policy if the insured does not specifically intend to cause the resulting harm or is notsubstantially certain that such harm will occur.'" Swanson
at 193, quoting Quincy Mut. Fire Ins. Co. v. Abernathy (1984),393 Mass. 81, 84. Had the Swanson shooting been at close range, the facts would have been more analogous to those of [Gill]." (Emphasis added.) Gearing at 39. "In Swanson, the tortfeasor's act of shooting towards a group of bystanders was not excluded from coverage because he lacked intent to injure. While this result may be palatable where the insured shot from a distance of seventy feet, had the insured fired from only ten or even five feet away, causing the same injuries and also claiming the same lack of intent, certainly a different result should follow due to the foreseeability of the injury." Buckeye Union,supra, at 288 (Cook, J., concurring.)
 {¶ 28} Here, the problem is that the shooting did not occur at 70 feet like in Swanson, and it did not occur at 5-10 feet like the example in Buckeye Union. Instead, it occurred at 20-25 feet with a totally different set of circumstances. Instead of a 12-year-old with BBs, we have an adult with bullets. This difference in the circumstances supports the view that it was intentional.
 {¶ 29} On the other hand, it was "kind of dark" and snowing. The bullet would not have hit Lockhart had he remained directly behind the steering wheel. The driveway was uneven. Tumbleson had at least two beers. We find that this set of circumstances creates doubt because some competent, credible evidence supports the view that this was an occurrence. Therefore, we cannot say that Tumbleson's acts of shooting were substantially certain to cause Lockhart's injuries.
 {¶ 30} Hence, based on these circumstances, we cannot find that "intent to injure" is inferred as a matter of law. Consequently, we find that the trial court did not err when it overruled Grange's motion for summary judgment and when it refused to instruct the jury that "intent to injure" is inferred as a matter of law.
 {¶ 31} Accordingly, we overrule Grange's first and second assignments of error.
 III {¶ 32} Grange argues in its third assignment of error that the trial court erred when it refused to give its proffered instruction, which would have defined accident for the jury. We disagree.
 {¶ 33} A trial court has broad discretion in instructing the jury. Jenkins v. Clark (1982), 7 Ohio App.3d 93, 100. The court ordinarily should give a requested jury instruction if is a correct statement of law, which is applicable to the facts in the case, and reasonable minds might reach the conclusion sought by the specific instruction. Murphy v. Carrollton Mfg. Co. (1991),61 Ohio St.3d 585, 591.
 {¶ 34} The proper standard of review for an appellate court is whether the trial court's refusal to give a requested jury instruction constituted an abuse of discretion under the facts and circumstances of the case. State v. Wolons (1989),44 Ohio St.3d 64, 68. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 35} Here, the court defined the word "occurrence" for the jury by reading the definition in the policy. Grange did not give a definition for accident in its policy. Apparently, it felt that its customers understood the concept. Many "common knowledge" words are not defined because of the assumption that it is not necessary. See, e.g., State v. Hook (Aug. 6, 1997), Marion App. No. 9-97-21, at 5, 1997 WL 445814. We must give the language of an insurance policy its plain and ordinary meaning. DairylandIns. Co., supra. Throughout the proceedings the words "occurrence" and "accident" were used in the context that they had similar meanings. For example, the jury was asked to answer the following interrogatory: "Do you find the plaintiff [Grange] has proven by a preponderance of the evidence that the shooting of Jerry Lee Lockhart by Christopher Tumbleson was not an occurrence, that is an accident?" (Emphasis added.) Hence, we find that the word "accident" is a "common knowledge" word that does not need further explanation. Consequently, we find that the trial court did not abuse its discretion when it gave the definition of occurrence but refused to give the definition of accident.
 {¶ 36} Accordingly, we overrule Grange's third assignment of error.
 IV {¶ 37} In conclusion, we overrule Grange's first and second assignments of error because the "intent to injure" element of uninsurability is not inferred as a matter of law under the circumstances of this case. We overrule Grange's third assignment of error because the word "accident" is a "common knowledge" word that does not need to be defined to the jury. Accordingly, we affirm the judgment of the trial court.
Judgment affirmed.
Harsha, J., concurs in judgment only.
Evans, J., not participating.
JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellees recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
Harsha, J.: Concurs in Judgment Only.
Evans, J.: Not Participating.